**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

PC CONNECTION, INC.,

       Plaintiff,

          v.                No.

STEPHEN P. PRICE,

       Defendant.

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

### INTRODUCTION AND NATURE OF THE ACTION

1.      This is an action for injunctive relief, damages and other relief arising out of Defendant's breach of contract and unfair and deceptive trade practices.

2.      Until recently, the Defendant was employed by PC Connection, Inc. ("PC Connection") as a Business Development Manager ("BDM").  At PC Connection, Defendant was responsible for supporting, nurturing, maintaining and developing new business in "SMB" accounts (accounts with 250-1500 users).  He was tasked with meeting and exceeding revenue and profit targets within the DC, MD, VA, WV states via sales of all relevant hardware, software, and any and all services and solutions that our customers may need.  In his BDM position, Defendant played a significant role in PC Connection's sales process, developed critical and long-term relationships with PC Connection's customers, potential customers and strategic vendor partners and became intimately familiar with PC Connection's confidential and proprietary information, including its methodologies and business strategies.

3.      As a BDM, Defendant worked closely with business partners and inside Sales Account Managers to help penetrate accounts and win business on behalf of PC Connection.  He developed and delivered presentations to a wide variety of customers that promote PC Connection's capabilities and benefits as the primary and trusted source for IT products and services.  Defendant met periodically with PC Connection sales management to review execution of business plans, goals and objectives.

4.      At the inception of his employment with PC Connection Defendant executed an Employee Agreement ("Agreement") that imposes an 18-month restriction on his post-employment solicitation of PC Connection's customers, prospective customers or employees, and on his ability to compete against PC Connection.  The Agreement also prohibited Defendant from using PC Connection's Confidential Information (as defined in the Agreement), and provided that PC Connection owned any goodwill developed by Defendant with any PC Connection customers, prospective customers, subcontractors, supplier and vendors during Defendant's employment with PC Connection.  A copy of the Agreement is attached as Exhibit A.

5.      Defendant violated his Agreement with PC Connection when, after his resignation from PC Connection, he began to work for Presidio, Inc. ("Presidio"), a direct competitor of PC Connection, in a sales role, in violation of numerous terms of the Agreement.

## PARTIES

6.      Plaintiff PC Connection is a Delaware corporation with a principal place of business in Merrimack, New Hampshire.

7.      Defendant Stephen P. Price ("Defendant" or "Price") is a resident of Abingdon, Maryland.

## JURISDICTION, VENUE AND APPLICABLE LAW

8.    The Court has personal jurisdiction over the Defendant because he consented in the Agreement to submit to the jurisdiction of the federal and state courts in the State of New Hampshire.  Exhibit A, ¶ 4.7.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction, or a substantial part of property that is the subject of the action is situated in this district.  Venue is also proper in this District because Defendant consented to submit to the jurisdiction of this Court in the Agreement.  Id.  28 U.S.C. § 1391 (b)(2)

10.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000.00 exclusive of interests and costs and is between citizens of different states.

11.    The Agreement calls for the application of New Hampshire law to any dispute regarding the Agreement.  Exhibit A, ¶ 12.

## FACTS

### PC Connection's Business

12.    PC Connection was founded in 1982, as the personal computer industry was emerging, to provide customers with a better way to purchase information technology products and services.  Since its founding PC Connection has grown to become a publicly traded Fortune 1000 company.

13.    PC Connection is headquartered in New Hampshire and has over 2,000 employees nationwide.

14.     PC Connection sells computers, software and related products and services nationally to businesses of all sizes and to government agencies.

15.     PC Connection works with current and potential customers to recommend appropriate products and services.  This process requires extensive interaction between PC Connection's employees and its customers and potential customers.  PC Connection will gather information regarding the potential customer, their needs, budget and future business plans.  This information is used to provide recommendations to the customers and potential customers.

16.     After a sale is made, PC Connection continues to work with the customer to provide training and ongoing support to ensure that the products and services are implemented correctly.

17.     Many companies purchase products and services on a regular, cyclical, basis.  For this reason, PC Connection expects and encourages those employees who work with customers to provide advice on product and service optimization to develop close and long-term relationships with the individuals responsible for purchasing decisions.  PC Connection's business model relies on the development of long-term customer relationships in which the customers come to rely on the service and advice provided by PC Connection.

18.     While other companies also provide advice to clients on the purchase of products and services, PC Connection is one of a limited number of companies that has been regularly recognized for its superior sales strategy.  PC Connection has invested significant resources in developing the expertise necessary to provide purchasing advice and in a methodology that allows PC Connection to provide better advice than its competitors.

## The Defendant's Employment With PC Connection

19.     By letter dated March 16, 2010, PC Connection offered Defendant employment as a Business Development Manager.

20.     As set forth in his employment offer letter, Defendant was required to sign the Agreement as a condition of his employment.

21.     Defendant accepted PC Connection's employment offer on March 18, 2010 and signed the Agreement on that same day.  See Exhibit A

22.     Defendant commenced employment with PC Connection on April 5, 2010.

23.     As a Business Development Manager, Defendant worked directly with PC Connection's customers and potential customers regarding the purchasing of PC Connection products and services in DC, MD, WV, and VA.

24.     Defendant's work was a critical component of PC Connection's sales of products and services to customers and potential customers in the Mid-Atlantic region, including orders by individual customers resulting in millions of revenue dollars.

25.     During his employment with PC Connection, Defendant obtained detailed knowledge of confidential information regarding PC Connection's overall business practices related to sales, including its pricing structure and strategies and how business opportunities were approached.  The information that Defendant had access to was not shared with customers and was not fully disclosed to customers or potential customers during the sales process.

26.     During his employment with PC Connection, including shortly before he voluntarily ended his employment, Defendant participated in high-level strategy discussions regarding PC Connection's business.  As a participant in these discussions Defendant had access

to PC Connection's short and long-term strategy with respect to sales, including its strategy with respect to all size of corporate and government customers and potential customers.

### The Agreement

27.     The Agreement between Defendant and PC Connection provides, in relevant part:

**2.     Confidentiality**

2.1     <u>Nondisclosure and Nonuse of Confidential Information</u>.  I agree that all Confidential Information, as defined below, which I create or to which I have access as the result of my employment and other associations with the Company is and shall remain the sole and exclusive property of PC Connection. I agree that, except as required for the proper performance of my regular duties for the Company, as expressly authorized in writing in advance by the Company, or as required by applicable law, I will never, directly or indirectly, use or disclose any Confidential Information. I understand and agree that this restriction shall continue to apply after the termination of my employment or this Agreement, howsoever caused.  Further, I agree to furnish prompt notice to PC Connection of any required disclosure of Confidential Information sought pursuant to subpoena, court order or any other legal process or requirement, and agree to provide the Company a reasonable opportunity to seek protection of the Confidential Information prior to any such disclosure.

. . .

**4.     Non-Competition and Other Restricted Activity**

4.1     <u>Non-Competition</u>.  I agree that, during my employment and during the 18-month period immediately following the termination of my employment for any reason, I will not, directly or indirectly, compete, or undertake any planning to compete, with PC Connection, anywhere in the world, whether as an owner, partner, investor, consultant, employee or otherwise.  Specifically, but without limiting the foregoing, I agree not to work or provide services, in any capacity, whether as an employee, independent contractor or otherwise, whether with or without compensation, to any Person who is engaged in any business that is competitive with the business of the Company, as conducted or in planning during my employment.  A competitive business shall, without express or implied limitation, include any Person engaged in the sales, marketing, and service of computer networking hardware,

software, peripherals and related services primarily through telephonic and electronic commerce. I understand that the foregoing shall not prevent my passive ownership of one percent (1%) or less of the equity securities of any publicly traded company.

4.2     <u>Good Will</u>.  I acknowledge and agree that any and all good will which I develop during my employment with any of the customers, prospective customers, subcontractors or suppliers of PC Connection shall be the sole, exclusive and permanent property of the Company, and shall continue to be such after the termination of my employment, howsoever caused.

4.3     <u>Non-Solicitation of Customers</u>.   I agree that, during my employment and during the 18-month period immediately following the termination of my employment for any reason, I will not, directly or indirectly, solicit, encourage or induce any customer of PC Connection to terminate or diminish its business relationship or patronage with the Company; or (b) seek to persuade or induce any such customer or prospective customer of PC Connection to conduct with anyone else any business or activity which such customer or prospective customer conducts or could conduct with the Company. Provided, these restrictions shall apply (y) only with respect to those Persons who are or have been a customer of PC Connection at any time within the immediately, preceding one-year period or whose business has been solicited on behalf of the Company by any of its officers, employees or agents within said one-year period, other than by form letter, blanket mailing or published advertisement, and (z) only if I have performed work for such Person during my employment with the Company or have been introduced to, or otherwise had contact with, such Person as a result of my employment or other associations with the Company or have had access to Confidential Information which would assist in the solicitation of such Person.

. . .

4.5     <u>Notice of New Address and Employment</u>.  During the 18-month period immediately following the termination of my employment for any reason, I will notify PC Connection in writing of any change in my address and of each new job or other business activity in which I plan to engage at least two weeks prior to beginning such job or activity.  Such notice shall state the name and address of any new employer and the nature of my position. I further agree to provide PC Connection with any other pertinent information concerning such business activity as the Company may reasonably request in order to determine my continued

compliance with my obligations under this Agreement. I agree to notify my new employer(s) of my obligations under this Agreement, and hereby consent to notification by the Company to my new employer(s) concerning my obligations under this Agreement.

### The Defendant Resigns And Accepts
### Employment With A Direct Competitor

28.     Defendant notified PC Connection on May 22, 2015 that he was voluntarily resigning his employment in order to go to work for Presidio.

29.     During his telephonic exit interview on May 26, 2015, PC Connection reminded Defendant of the restrictions imposed by Paragraph 4 of his Agreement.

30.     During his exit interview Defendant informed PC Connection that he would be working in sales for Presidio, however he refused to share his title.

31.     Presidio is a direct competitor to PC Connection and advertises itself as "the leading provider of professional and managed services for advanced IT solutions."  Presidio claims to have over 55 offices across the United States.

32.     On May 28, 2015, through counsel, PC Connection reminded Defendant of his contractual obligations, and of their belief that his employment with Presidio would violate those obligations.  PC Connection also informed Presidio of Defendant's contractual obligations to PC Connection.

33.     Both Defendant and Counsel for Presidio responded to the May 28, 2015 correspondence from PC Connection's counsel.  They both indicated that, notwithstanding the Agreement, Defendant still planned on working for, and Presidio still planned on employing, Defendant.  Such employment constitutes a breach of the Agreement.

## COUNT I
### Breach Of Contract

34.     PC Connection restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

35.     Defendant entered into the Agreement, as described above, for good consideration.

36.     The Agreement is an enforceable contract between PC Connection and the Defendant.

37.     Defendant has materially breached the Agreement by seeking and accepting subsequent employment, including in a sales capacity, from Presidio, a direct competitor of PC Connection.

38.     Further, by providing services to Presidio, Defendant will inevitably breach his Agreement not to divulge PC Connection's Confidential Information.

39.     PC Connection may learn of additional breaches of contract by the Defendant during discovery and reserves its rights to amend this Complaint and/or recover for any breach of the Agreement by the Defendant.

40.     Defendant's breach of the Agreement was and is a substantial factor in directly and proximately causing damages and irreparable harm to PC Connection.  The amount of damages cannot reasonably be ascertained at present but will exceed $75,000.  PC Connection has been and continues to be irreparably harmed by Defendant's actions.

41.     Unless restrained by this Court, Defendant will continue his unlawful actions and PC Connection will continue to be irreparably harmed.

42.     PC Connection will not have an adequate remedy at law for the harm and damage which Defendant's breach of his Agreement will cause and is entitled to a preliminary and permanent injunction, enjoining Defendant from further unlawful acts.

**COUNT II**
**Breach Of Implied Covenant Of Good Faith And Fair Dealing**

43.     PC Connection restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

44.     Implied in every New Hampshire contract is an obligation that the parties act in good faith and deal fairly with one another in the inducement and performance of their contractual obligations.  Defendant has breached this implied covenant by acting in bad faith in performance of his obligations pursuant to the Agreement.  Although Defendant agreed to comply with the non-competition provisions of the Agreement, he thereafter failed to honor those obligations.

45.     Defendant's breach of his obligation of good faith and fair dealing was and is a substantial factor in directly and proximately causing damages and irreparable harm to PC Connection.  The amount of damages cannot reasonably be ascertained at present but will exceed $75,000.   PC Connection has been and continues to be irreparably harmed by Defendant's actions.

46.     Unless restrained by this Court, Defendant will continue his unlawful actions and PC Connection will continue to be irreparably harmed.

47.     PC Connection will not have an adequate remedy at law for the harm and damage which Defendant's breach of his duty of good faith and fair dealing will cause and is entitled to a preliminary and permanent injunction, enjoining Defendant from further unlawful acts.

## REQUESTS FOR RELIEF

WHEREFORE, PC Connection requests that this Court award the following relief:

A.      Enter judgment in favor of PC Connection on all Counts in the present Complaint;

B.      Award damages to PC Connection in an amount to be determined at trial;

C.      Award PC Connection its costs, interest, and reasonable attorneys' fees;

D.      Issue a preliminary and permanent injunction prohibiting Defendant from taking any action inconsistent with his obligations under the Agreement, including providing services to Presidio or any PC Connection competitor, or accepting employment with Presidio or any PC Connection competitor, for 18 months following the issuance of such injunction; and

E.      Award PC Connection such other relief as this Court deems just and proper.

Dated: June 5, 2015

Respectfully submitted,

PC CONNECTION, INC

By its attorneys,

/s/      K. Joshua Scott
K. Joshua Scott (NH Bar No. 17479)
JACKSON LEWIS, P.C.
100 International Drive, Suite 363
Portsmouth, NH 03801
Phone: (603) 559-2700
Fax: (603) 559-2701
kjoshua.scott@jacksonlewis.com

4822-8281-4756, v. 2