UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____

PC Connection, Inc.                    )
                                       )        Docket No.  1:15-cv-000208-PB
          Plaintiff,                   )
v.                                     )
                                       )
Stephen P. Price                       )
                                       )
          Defendant.                   )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Pursuant to FED R. CIV. P. 12(b)(1) and (6), Stephen Price ("Price") moves to dismiss PC Connection's complaint for failure to state a claim upon which relief can be granted.  In its amended complaint, PC Connection alleges four claims: 1) breach of contract; 2) breach of implied covenant of good faith and fair dealing; 3) conversion of data; and 4) breach of fiduciary duties.  PC Connection alleges that Price breached, or will breach the parties' agreement by accepting employment with a competitor, soliciting customers and prospective customers, retaining its  confidential data, and using or disclosing that data on behalf of Presidio.  PC Connection's attempt to protect its confidential information, customers, and goodwill by prohibiting the Defendant from directly or indirectly competing, or planning to compete, with PC Connection anywhere in the world is improper.  This type of blanket restriction has been routinely struck down by New Hampshire courts.  PC Connection also seeks to protect its entire customer base from solicitation, contrary to well-established New Hampshire law.

After Price moved to dismiss its first complaint, PC Connection filed an Amended complaint adding claims of conversion and breach of fiduciary duties.  Both of these claims fail

as a matter of law.  New Hampshire common law does not permit recovery for conversion of intangibles such as electronic data.  PC Connection's claim that Price breached his fiduciary duties is nothing more than a restatement of its breach of contract claim and is preempted by the New Hampshire Uniform Trade Secrets Act.

In addition, PC Connection's compliant fails to allege adequate facts to support the minimum amount in controversy needed to confer subject matter jurisdiction to the Court.  Its complaint should be dismissed because it has failed to adequately plead an enforceable non-competition and non-solicitation contract provisions, conversion claim, breach of fiduciary duty claim, a request for injunctive relief, and that it can satisfy the amount in controversy required for diversity jurisdiction.

## I.      Background

PC Connection is a Delaware corporation with a principal place of business in New Hampshire. Doc. 12, ¶7.  Stephen Price is a Maryland citizen who accepted employment with PC Connection in March of 2010, as a Business Development Manager ("BDM"). *Id*., ¶¶3, 8.  After accepting his position with PC Connection, the company presented Price with an employment agreement ("Agreement") and told him that he could not work without signing the document. *Id*., ¶5.  Price was also told that there would be opportunities to grow while at PC Connection.  Price signed the Agreement and began working for PC Connection in April of 2010. *Id*., ¶20.

PC Connection's BDM is a field-based position responsible for maintaining and growing existing account relationships. *Id*., ¶3.  Price's territory was limited to the Mid-Atlantic region, where he primarily served existing PC Connection customers in Washington DC, Maryland, Virginia, and West Virginia. *Id*., ¶3.  PC Connection primarily sold products, like laptops and

desktops, to its customers. *Id.*  Price was not involved with government or large business clients.
Rather, Price worked with small to medium businesses.

During his tenure at PC Connection, Price often traveled for work, but saw little growth
in his salary.  He also observed that the BDM team was shrinking and that PC Connection
increasingly was utilizing its Account Managers to fulfill traditional BDM duties.  The lack of
professional growth, small salary increases, and shrinking BDM team forced Price to look for
other employment.  Price ultimately accepted an Account Manager position with Presidio, which
pays a higher salary and requires less travel than his position at PC Connection.  Presidio is
located in Maryland and provides its customers with information technology services, such as
cybersecurity and telecommunications.

On May 22, 2015, Price tendered his resignation to PC Connection. *Id.*, ¶30.  PC
Connection immediately terminated his access to its data.  On May 26, 2015, Price participated
in an exit interview during which he was told that a postage paid box would be provided to him
to return all of PC Connection's equipment. *Id.*, ¶31; *see also* Docs. 11-2 and 11-3.  Once Price
received the postage paid box, he immediately returned all of PC Connection's equipment. *Id.*
On Thursday, May 28, 2015, PC Connection's attorney emailed Price a letter demanding "the
immediate return of any PC Connection property" and to express concerns about his employment
with Presidio. Doc. 11-2.  The letter further demanded that Price "provide written assurances by
noon on Monday June 1, 2015, that you will honor all of your obligations under your Agreement.
Further, to the extent you believe you can still remain employed by Presidio in light of your
contract obligation, PC Connection demands that you provide a detailed description of your
responsibilities at Presidio, and explain how such employment is not a violation of your
Agreement." *Id.*  PC Connection's letter to Price is almost identical to letters it has sent to other

former employees. *See PC Connection v. Nagurney, USDC NH Docket No. 15-cv-00051, at* Doc. 5-3.

Because PC Connection demanded a response in less than two business days, Price was unable to obtain counsel and responded himself on May 31, 2015. Doc 11-2, explaining that he had returned all PC Connection property. Doc. 11-2 and 11-3.  On June 10, 2015, PC Connection confirmed that it had received all equipment and needed nothing further from Price.  Ex. 1, email dated 06-10-15.  Price provided assurances that he had kept, and would keep, confidential any "proprietary knowledge, information, or data acquired in confidence during my employment with [PC Connection] and would not disclose to Presidio or induce Presidio to use any confidential or proprietary information belonging to [PC Connection]." Doc. 11-3.  He also explained that his Presidio job responsibilities and prospective customers are completely different than they were at PC Connection, and requested that it not interfere with his ability to make a living. *Id*.  On June 1, 2015, Price began working for Presidio.[1]  Eight days after it assured that Price owed nothing, PC Connection filed suit alleging a breach of contract and a breach of the implied covenant of good faith and fair dealing.  PC Connection also sought to enjoin Price from "providing services to Presidio or ***any*** PC Connection competitor or accepting employment with Presidio or any PC Connection competitor, for 18 months." Doc. 12, p. 14 (emphasis added).

---

[1] Presidio requires that Price "will not utilize or make available to [Presidio] any confidential or proprietary information of any third party or violate any obligation with respect to such information." Doc. 11-4.  In addition, Price is required to "not breach any agreement or obligation to keep in confidence any proprietary information belonging to another party" and not disclose or otherwise use any such information in connection with his employment. *Id*.  Presidio forbids Price from bringing or using "customer lists or other confidential information" from any of his previous employers and from pursuing "any customers or opportunities" with which he was involved. *Id*. (emphasis added).

After Price moved to dismiss, PC Connection amended its complaint to include additional allegations and claims of conversion and breach of fiduciary duty.  PC Connection also amended its breach of contract claim to include allegations that the Defendant either has or will solicit a PC Connection customer, or prospective customer, and retained or disclosed PC Connection data. *Id.*, pp. 10-11.  However, PC Connection continues to maintain that it is unable to ascertain the amount of damages as a result of Defendant's alleged breaches that may have, or possibly will take place in the future.

**II.     Legal Analysis**

    **a.     Standard of Review**

In reviewing a motion to dismiss under FED R. CIV. P. 12(b)(1) and (6), the court is to assume the truth of all well-plead facts and give the Plaintiff the benefit of all reasonable inferences therefrom.  *Alvarado Aguilera v. Negron*, 509 F.3d 50 (1st Cir. 2007).  To state a claim, a plaintiff must set forth "[f]actual allegations [that are] enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 589 (2007) (citations and footnote omitted). This showing "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  If the complaint fails to set forth facts sufficient to establish a "claim to relief that is plausible on its face," dismissal under FED R. CIV. P. 12(b)(6) is appropriate. *Id*.

When considering a motion under Fed R. Civ. P. 12(b)(6), a court may generally consider only facts and documents that are a part of or incorporated into the complaint.  *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008), citing *Garita Hotel Ltd. Pshp. v.*

*Ponce Fed. Bank, F.S.B.*, 958 F.2d 15 (1st Cir. 1992).  The court also may consider extrinsic

documents if they are central to the dispute.  *Fudge v. Penthouse Int'l LTD.*, 840 F.2d 1012, 1015

(1st Cir. 1988).  When a complaint's factual allegations are expressly linked to a document, that

document effectively merges into the pleadings and the trial court can review it in deciding a

motion to dismiss under Rule 12(b)(6). *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 17

(1st Cir. 1998).  Courts may also consider documents with which authenticity is not disputed

without converting a motion to dismiss to a motion for summary judgment. *Watterson v. Page*,

987 F.2d 1, 3 (1st Cir. 1993).  PC Connection has attached to its complaint the Agreement

executed by the parties, but not the May 28, 2015 letter to Price or his response expressly

referenced in the complaint. Doc. 12, ¶¶34, 35.

Pursuant to Rule 12(b)(1) a party may assert a lack of subject matter defense in a motion

to dismiss.  In order for the Court to have subject matter jurisdiction in a diversity suit, the

plaintiff must demonstrate that it fulfills the amount in controversy minimum of $75,000. 28

U.S.C. § 1332(a).  The party asserting diversity jurisdiction, if challenged, bears the burden of

demonstrating its existence. *Department of Recreation and Sports of Puerto Rico v. World

Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991)

> **b**.      **PC Connection's Complaint Fails to State a Claim Upon Which Relief Can
> be Granted Because it Seeks to Enforce a Restrictive Covenant that
> Unreasonably Restrains Trade**

PC Connection alleges that the Defendant breached their agreement, in part, by accepting

employment with a competitor and possibly soliciting PC Connection's prospective customers.

In its second count, PC Connection alleges that the Defendant breached an implied covenant of

good faith and fair dealing by accepting employment with a competitor in violation of an

unenforceable non-compete agreement.  To the extent that PC Connection seeks to enforce

unreasonable and unenforceable contract clauses, PC Connection fails to state a claim upon

which relief can be granted. The Agreement specifies that New Hampshire law governs this matter. Doc. 12.

To state a claim for breach of contract, "a plaintiff must show: (1) the existence of a valid, enforceable contract; (2) performance of the contract by the plaintiff; (3) a breach by the defendant; and (4) damages caused by the defendant's breach." *Sunapee Difference, L.L.C. v. State*, 2009 N.H. Super. LEXIS 4, 16-17 (N.H. Super. Ct. 2009)(affirmed by *Sunapee Difference, LLC v. State*, 164 N.H. 778, 792 (N.H. 2013)).

PC Connection alleges that Price breached the Agreement by "seeking and accepting subsequent employment, including in a sales capacity, from Presidio, a direct competitor of PC Connection." Doc. 12, ¶42. The alleged breach is based upon an unlawful provision in the Agreement that is unreasonable on its face. *Id*., ¶29, §4.1. That section provides:

> Non-Competition. I agree that, during my employment and during the 18-month period immediately following the termination of my employment for any reason, **I will not, directly or indirectly, compete, or undertake any planning to compete, with PC Connection, anywhere in the world**, whether as an owner, partner, investor, consultant, employee or otherwise. Specifically, but without limiting the foregoing, I agree not to work or provide services, in any capacity, whether as an employee, independent contractor or otherwise, whether with or without compensation, to any Person who is engaged in any business that is competitive with the business of the Company, as conducted or in planning during my employment. A competitive business shall, without express or implied limitation, include any Person engaged in the sales, marketing, and service of computer networking hardware, software, peripherals and related services primarily through telephonic and electronic commerce. I understand that the foregoing shall not prevent my passive ownership of one percent (1%) or less of the equity securities of any publicly traded company.

*Id.* (emphasis added).

PC Connection's second claim relies exclusively on the unlawful non-compete provision and is nothing more than a restatement of its breach of contract claim. PC Connection alleges Price breached the implied covenant of good faith and fair dealing by agreeing to comply with

the non-competition provisions of the Agreement and failing to honor those obligations. Doc. 12, ¶49.

The public policy of the State of New Hampshire encourages free trade, and discourages covenants not to compete. *Concord Orthopaedics Prof'l Ass'n. v. Forbes*, 142 NH 440, 443 (1997). Whether a covenant is reasonable is a matter of law decided by the court. *Id*. A restrictive covenant is unreasonable if (1) the restriction is greater than necessary to protect the legitimate interests of the employer; (2) it imposes undue hardship on the employee; or (3) if the restriction is injurious to public interest. *Merrimack Valley Wood Products, Inc. v. Near,* 152 N.H. 192, 197 (2005). PC Connection's restrictive covenant unreasonably imposes a restriction that is greater than necessary to protect the legitimate interests of the employer and imposes undue hardship on the employee, Price.

The first step in this analysis is to identify the employer's legitimate business interests. An employer has a legitimate interest in protecting from competition its trade secrets and confidential information that have been communicated to the employee; "an employee's special influence over the employer's customers, obtained during the course of employment; contacts developed during the employment; and the employer's development of goodwill and a positive image." *Syncom Indus. v. Wood*, 155 N.H. 73, 79 (N.H. 2007). Next examined is whether the restriction is greater than necessary to protect the legitimate interests of the employer. *Merrimack Valley,* 152 N.H. at 197. A restraint on competition must be narrowly tailored in both geography and duration. *Id*. The geographic limits imposed on an employee by a covenant not to compete "generally must be limited to that area in which the employee had client contact, as that is usually the extent of the area in which the employer's goodwill is subject to appropriation by the

employee." *Concord Orthopaedics*, 142 N.H. at 444.   In addition, a covenant that restricts the former employee from soliciting business from the employer's entire customer base sweeps too broadly. *Id*.; *see also Granite Investment Advisors, Inc. v. Michael L. Timm*, Merrimack Superior Court (McNamara, J.), Docket 2013-cv-00094, Doc. 11-5; *Id*.

In this case, the allegedly legitimate business interests of which Price had knowledge include sales practices, pricing structure and strategies, business opportunity approach, Mid-Atlantic customers, and goodwill. Doc. 12, ¶¶5, 24-29.  Although PC Connection does not allege how Price has improperly used confidential information or solicited its customers, it nevertheless seeks to protect those interests by prohibiting Price from directly or indirectly competing, or planning to compete with PC Connection *anywhere in the world.*  Rather than "narrowly tailoring" the restrictive covenant to protect its legitimate interests, PC Connection failed to tailor its restrictive covenant at all.   A restrictive covenant that purports to prohibit an employee from competing with the employer world-wide is facially unenforceable as it has no geographic limit whatsoever.  PC Connection does not allege that Price worked globally during his employment. Instead, PC Connection alleges that Price worked in a very distinct location, the mid-Atlantic region.  During his employment with PC Connection, Price worked only in Washington DC, Maryland, West Virginia, and Virginia. Doc.12, ¶3.

In stark contrast to New Hampshire law, PC Connection not only seeks to prevent Price from globally competing with it, but also to protect its entire customer base from solicitation, even its customers with which Price did not deal.  This type of blanket prohibition on competition has been struck down by New Hampshire courts. *See e.g. Concord Orthopaedics*, 142 N.H. at 444; *see also Syncom*, 155 N.H. at 79.  In *Syncom,* the New Hampshire Supreme Court struck down a non-competition clause similar to PC Connection's. *Id*.  The *Syncom*

plaintiff sought to enforce a restrictive covenant that prevented the defendants from "directly or indirectly, solicit[ing] business from any of the Company's customers located in any territory serviced by the Company while [they were] in the employment of the Company." *Id.*, 78.  The *Syncom* court overturned the trial court's finding that the defendants solicited its customers in violation of the restrictive covenant. *Id.*, 77.  The *Syncom* court found that because the restrictive covenant extended to customers with which the defendants had no direct contact, it was broader than necessary to protect the company's goodwill. *Id.*  The court also reasoned that an employer may restrict a former employee from soliciting business from customers with which he had no contact so long as the employee gained significant knowledge of those customers during the course of his employment. *Id.*

Like *Syncom*, PC Connection's restrictive covenant extends to customers with which Price had no direct contact.  To the extent that PC Connection is trying to restrict Price from soliciting business from customers with which he had no contact, but gained significant knowledge of during the course of his employment, it has failed to plead that.  PC Connection does not allege that Price had significant knowledge of PC Connection's entire customer base. Instead, PC Connection alleges that Price worked "with customers and potential customers in the Mid-Atlantic region." Doc. 12, ¶25.  PC Connection does not, and cannot, identify a single customer that Price has solicited or contacted after he quit working at PC Connection.

A restrictive covenant need only fail one of three prongs of unreasonableness to be unenforceable.  In this matter, it fails two.  The world-wide competition ban, if enforced, would cause great hardship on Price.  He would lose his current employment and be unemployable for the next seventeen months.  PC Connection fails to plead how the hardship imposed on Price is outweighed by the benefit enforcing the unlawful covenant.  PC Connection's breach of contract

10

claim based upon unenforceable and unreasonable non-compete and non-solicit provisions fail as a matter of law and should be dismissed.  PC Connection's claim that the Defendant breached an implied covenant of good faith and fair dealing should be dismissed in its entirety because it is based exclusively on the unreasonable and unenforceable non-complete clause.

### c.      PC Connection's Unlawful Non-Compete Provision should not be Reformed Because PC Connection has not Acted in Good Faith

The Defendant anticipates that PC Connection will attempt to overcome its unenforceable non-competition agreement by asking the Court to reform its unlawful aspects.  However, the Court should refuse to reform the non-competition agreement because PC Connection has not acted in good faith.  New Hampshire law has clearly prohibited such vastly over-broad non-competition agreements for more than thirteen years prior to PC Connection presenting Price with the same in 2010. *See Concord Orthopaedics* (1997); and *Syncom* (2007); *see also PC Connection v. Nagurney, USDC NH Docket No. 15-cv-00051,* [2] Doc. 12, ¶29 (using the same restrictive language in a 2011 non-compete agreement); Doc. 11-6 and Doc 11-7, *Letters to and from Counsel for PC Connection*[3] dated October 22, 2014, and February 10, 2015.  In addition, PC Connection is well aware that its non-competition covenant is vastly overbroad.  This office has informed its counsel about this matter on numerous occasions. *Id.*  Despite this, PC Connection continues to include the unreasonable, world-wide ban on competition in its employment agreements and continues to threaten its former employees with it.

---

[2] Although the *PC Connection v. Nagurney* case is outside the four-corners of PC Connection's complaint, it was filed in this Court and involved the exact unreasonable non-competition language found in Price's Agreement.  The only difference is that Nagurney's employment with PC Connection began a year after Price's showing that PC Connection continues to present the vastly overbroad, restrictive covenant.

[3] The Court also may consider extrinsic documents if the parties do not dispute their authenticity. *Watterson*, 987 F.2d 4.  Given that these letters were written to PC Connection's Counsel, who has also filed an Appearance in this matter, the authenticity cannot be disputed in good faith.

Courts "have the power to reform overly broad restrictive covenants if the employer shows that it acted in good faith in the execution of the employment contract." *Maddog Software, Inc. v. Sklader*, 2005 DNH 117 (D.N.H. 2005)(*quoting Merrimack Valley*, 152 N.H. at 200). Generally, courts will reform overly broad non-competition provisions when the terms are "merely marginally overbearing so as to suggest that the employer simply miscalculated the extent of the restrictions required for its reasonable protection." *Id*., (internal citations and quotations omitted). Similarly, the New Hampshire Business Court has held that an employer acts in bad faith when an employer presents a non-competition agreement that is far broader than what is contemplated by the relevant law. In *Granite*, the New Hampshire Business Court refused to reform the employer's non-competition agreement which purported to prohibit the employee from "working in an enterprise, which is directly or indirectly engaged in a business which is competitive with [employer's] business within a 75 mile radius of Concord, New Hampshire." Doc. 11-5; *Granite Investments*, p. 13. According to the court, the restrictive covenant was far broader than those considered in the controlling law and therefore could not have been in good faith. *Id.*

Like the plaintiff in *Granite*, PC Connection presented to Price a non-competition agreement with restrictions that far exceeded those considered reasonable by law. PC Connection even uses similar language to that in *Granite*. PC Connection seeks to prohibit Price from "directly or indirectly compet[ing], or undertak[ing] any planning to compete with PC Connection." *See Granite Investments,* p. 18 (compared to Doc. 12, ¶29, §4.1). Unlike *Granite*, however, which attempted to limit geographical scope, PC Connection's non-competition clause does not provide ***any*** geographic limit and instead seeks a complete ban of competition "anywhere in the world." Because this vastly overbroad restriction clearly violates New

Hampshire law, just as it did when PC Connection presented it to Price, it cannot evidence good faith on the part of PC Connection. The Court therefore should refuse to reform PC Connection's restrictive covenant.

>    **d.**     **PC Connection Is Not Entitled To a Preliminary Injunction**

PC Connection asks the Court to prohibit Price from competing against it and from working for his current employer, or any other employer that competes with PC Connection. To show that it is entitled to injunctive relief, a plaintiff must meet five criteria. The plaintiff must show (1) that it is likely to succeed on the merits; (2) irreparable harm if the motion is denied; (3) that there is no adequate remedy at law; (4) that the irreparable harm outweighs the harm that granting injunctive relief would cause the defendant; and (5) that it is not adverse to public interest. *See e.g. Maddog Software,* 2005 DNH 117. PC Connection is not entitled to injunctive relief as a matter of law because it has not sufficiently pled that it is likely to succeed on the merits, that there is no adequate remedy at law, or that granting the injunctive relief outweighs the hardship it would impose on Price. In addition, PC Connection's allegations regarding its irreparable harm are speculative.

PC Connection seeks to enjoin Price from "providing services to Presidio or any PC Connection competitor, or accepting employment with Presidio or any PC Connection competitor, for 18 months." Doc. 12, p. 14. PC Connection alleges that Price materially breached the Agreement "by seeking and accepting . . . employment" with "a direct competitor of PC Connection." *Id*. PC Connection's allegations rely upon an unlawful non-competition provision that purports to prohibit Price from competing with PC Connection anywhere in the world. It is well-settled New Hampshire law that a restrictive covenant is unreasonable if the restriction is greater than necessary to protect the legitimate interests of the employer or imposes

undue hardship on the employee. *See e.g. Merrimack Valley,* 152 N.H. at 197.  As discussed above, PC Connection's restrictions vastly exceed what is necessary to protect its legitimate business interests.  PC Connection's reliance on an unlawful restraint of trade agreement is not likely to succeed on its merits.

PC Connection must sufficiently plead that there is no adequate remedy at law when seeking injunctive relief.  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  PC Connection alleges that Price's breach of the Agreement was and is a substantial factor in directly and proximately causing damages to PC Connection. Doc. 12, ¶¶45, 47, 52.  In its request for relief, it asks the Court to award monetary damages for that breach. *Id*., p.14. Assuming that PC Connection's allegations are true, it has an adequate remedy, monetary damages to be determined at trial, if Price did violate the contract. *Id*.; *see also Maddog Software* (finding that had an ex-employee violated the covenant not to compete, the employer would have an adequate remedy at law for that breach).  PC Connection has merely recited this required element and has provided no factual or legal explanation as to how monetary damages are inadequate.

PC Connection fails to plead any facts that would establish that the benefits of injunctive relief would outweigh the hardships it would impose on Price.  The amended complaint still does not consider any hardships it would impose on Price let alone balance them.  PC Connection's request for injunctive relief would impose undue hardship on Mr. Price, in that they would leave him unemployed and seriously limit his employment opportunities without providing legitimate benefit to PC Connection.

PC Connection has not adequately pled alleged irreparable harm.  Instead, it simply presents a formulaic recitation of the required element for a preliminary injunction. *Twombly*, 550 U.S. at 589.  In fact, PC Connection fails to identify with requisite specificity what irreparable harm it will suffer without injunctive relief. Doc. 12.  According to PC Connection, Price will "***inevitably*** breach his Agreement not to divulge PC Connection's Confidential Information" and it "***may*** learn of additional breaches" that will cause "irreparable harm to PC Connection." Doc. 12, ¶43-44 (emphasis added).  "Irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).  As pled, PC Connection's allegations of irreparable harm are nothing more than a speculative, formulaic recitation of the elements required of the cause of action. *Twombly,* at 555.

e.    **New Hampshire Law Does Not Permit Recovery for Conversion of Electronic Data**

A claim of conversion under New Hampshire law must involve the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Kingston 1686 House, Inc. v. B.S.P. Transportation, Inc.*, 121 N.H. 93, 95 (1981) (quoting *Muzzy v. Rockingham County Trust Co.*, 113 N.H. 520, 523 (1973)).  PC Connection alleges in Count III of its amended complaint that it owns all data contained on its computer network and that "Defendant intentionally exercised dominion and control over the property of PC Connection" when he "connected a USB device to his PC Connection computer and downloaded PC Connection files to such device." Doc. 12, ¶¶ 54, 55.  PC Connection further alleges that Defendant converted PC Connection's data by emailing it to himself. *Id.*, ¶56.  The common law

claim of conversion permits recovery for conversion of a chattel, not confidential, proprietary, or electronic data.

Only three states recognize conversion of electronic data[4]: New York, Texas, and Virginia. *See e.g. Thyroff v. Nationwide Mut. Ins. Co.*, 864 N.E.2d 1272 (N.Y. 2007); *In re Yazoo Pipeline Co.*, L.P., 459 B.R. 636 (Bankr. S.D. Tex. 2011)(applying Texas law); *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 688 F. Supp. 2d 443, 2009-2 Trade Cas. (CCH) P 76728 (E.D. Va. 2009) (applying Virginia law).  New Hampshire common law does not protect confidential information from mere misuse unless it is a statutory trade secret. *Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 779 (N.H. 2006).  The common law of New Hampshire does not permit recovery for conversion of electronic data. *Id*.  As such, PC Connection's conversion claim should be dismissed.

f.    **Plaintiff's Conversion Claim is Preempted by the New Hampshire Uniform Trade Secrets Act**

Even if New Hampshire common law permitted a claim for conversion of electronic data, the claim would be preempted by the NHUTSA. N.H. R.S.A 350-B.  The NHUTSA creates:

> [A] uniform business environment that creates more certain standards for protection of commercially valuable information. The purpose of the preemption provision is to preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information that may not meet the statutory standard for a trade secret. As such, the UTSA is meant to codify all the various common law remedies for theft of ideas. With the enactment of the UTSA, confidential information not rising to the level of a statutory trade secret is left largely unprotected by the law.

*Mortgage Specialists, Inc. v. Davey*, 153 N.H. 764, 776 (N.H. 2006)(internal citation omitted);

N.H. Rev. Stat. Ann. § 350-B:7(I). The preemption provision states that the NHUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for

---

[4] A handful of states recognize claims for conversion of domain names. *See e.g. CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138 (9th Cir. 2010) (applying California law)

misappropriation of a trade secret." N.H. Rev. Stat. Ann. § 350-B:7.  The New Hampshire

Supreme Court has held that the NHUTSA "preempts claims that are based upon the

unauthorized use of information, regardless of whether that information meets the statutory

definition of a trade secret." *See Glynn v. EDO Corp.*, 641 F. Supp. 2d 476, 482 (D. Md.

2009)(applying New Hampshire law to a claim of conversion involving confidential and

propriety data and quoting *Mortgage Specialists*, 904 A.2d at 664). Conversion claims based on

"proprietary documents, employee information, technology design and schematics, contact lists,

vendor and pricing information, and other trade secrets and non-trade secret proprietary and

confidential information" are preempted by the NHUTSA. *Id*. at 483.

   In *Mortgage Specialists*, the New Hampshire Supreme Court found that the plaintiff's

claim for conversion was preempted by the NHUTSA because the claim was based solely on

allegations that the defendants took the plaintiff's customer information. *Mortgage Specialists*,

904 A.2d at 666.  Similarly, Mortgage Specialists' claim for breach of fiduciary duty was also

preempted because it was based solely on factual allegations that the defendants took and used

the plaintiff's customer information. *Id*. at 667.

   In *Glynn*, the claim for conversion was based on allegations that the defendants took and

used the plaintiff's confidential information. *Glynn v. EDO Corp.*, 641 F. Supp. 2d at 482.  The

court dismissed the claim because any claims based on the taking of confidential information are

preempted by the NHUTSA. *Id*.

   This case is similar to both *Mortgage Specialists* and *Glynn*.  PC Connection's

conversion claim is based entirely on allegations that the Defendant downloaded PC Connection

data or emailed data to himself. Doc. 12, ¶¶54-56.  Because the NHUTSA "preempts claims that

are based upon the unauthorized use of information, regardless of whether that information meets

the statutory definition of a trade secret," the Plaintiff's common law conversion claim is

preempted and should be dismissed. *See Supra Glynn v. EDO Corp*., 641 F. Supp. 2d at 482; *See*

*also Wilcox Indus. Corp. v. Hansen*, 2012 DNH 92 (2012).

> **g.**     **Plaintiff's Claim of Breach of Fiduciary Duties is not Sufficiently Pled, Repetitive, and Preempted by NHUTSA**

PC Connection alleges that the Defendant owed fiduciary duties of loyalty and care to his

former employer and breached those duties "by his actions, including those described above"

causing PC Connection substantial and egregious harm. Doc. 12, ¶¶58-59.  PC Connections two

paragraph claim is nothing more than labels, conclusions, and a formulaic recitation of the

elements of a cause, which are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at

555.

Even if PC Connection had sufficiently pled a claim for breach of fiduciary duties, its

claim fails as a matter of law.  PC Connection has alleged claims of breach of contract, breach of

covenant of good faith and fair dealing, conversion of confidential data, and breach of fiduciary

duties. Doc. 12.  PC Connection has not alleged any fiduciary duty owed by the Defendant other

than those based upon parties' agreement.  According to the Employment Agreement, Price was

a PC Connection employee whose duty of loyalty was spelled out by the parties' Agreement.

Doc. 12-1.  Based on its allegations, it appears that PC Connection's claim for breach of

fiduciary duty is simply a restatement of its first three counts of breach of contract, breach of an

implied covenant, and conversion of data. *Id*.

All the actions contained in PC Connection's amended complaint are governed by either

the parties' Agreement or preempted by NHUTSA. When the actions complained of are

governed by a contract, the obligations of the parties are determined by contract law and not by

fiduciary principles. *Clapp v. Goffstown Sch. Dist.*, 159 N.H. 206, 211 (N.H. 2009); *See also*

18

*Wilcox Indus. Corp. v. Hansen,* 2012 DNH 92, (holding that it would dismiss an unjust enrichment claim because it was a restatement of the plaintiff's breach of contract claim).  The allegations that the Defendant is improperly competing with PC Connection also arises from contract. Doc.12, ¶42.  In this matter, the Price's alleged improper competition occurred after his employment relationship with PC Connection ended.  According to the Restatements of Agency, "following the termination of an agency relationship, the agent is free to compete with the principal, except to the extent that the agent has entered into an *enforceable* agreement not to compete with the principal." *Restat 3d of Agency*, § 8.04 (emphasis added).  Price's purported improper competition with PC Connection is either governed by the parties' Agreement, which is unenforceable, or it is permitted because his employment with PC Connection ended, as did any duty of loyalty he may have owed.

Similarly, to the extent that PC Connection's breach of fiduciary duty is based upon allegations that the Defendant misappropriated its data, it arises out of a contract and is preempted by NHUTSA. Doc.12, ¶¶ 42, 54-56. A claim for breach of fiduciary duty based upon factual allegations that the defendant took and used the confidential information is also preempted. *Mortgage Specialists*, 904 A.2d at 667; *Wilcox Indus. Corp. v. Hansen*, 2012 DNH 92 (2012).

Because PC Connection's claim for breach of fiduciary duty is nothing more than a restatement of its breach of contract and conversion claims, it should be dismissed.

     h.    **The Court should not Exercise Subject Matter Jurisdiction because PC Connection has not Sufficiently Pled Facts to Support that its Alleged Damages Exceed $75,000**

To establish subject matter jurisdiction based on diversity, the party asserting jurisdiction must show that the amount in controversy in the action exceeds the sum of $ 75,000. 28 U.S.C.S.

§ 1332(a). The amount in controversy is determined by the circumstances at the time the complaint was filed. *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995); *Nollet v. Palmer*, 2002 DNH 136 (2002). If it appears to a legal certainty that the claim is less than the jurisdictional limit, the claim is dismissed for lack of subject matter jurisdiction. *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012). Generally, the plaintiff's alleged sum of damages meets the amount in controversy requirement. *Id.* However, if the complaint's face reveals that controversy does not involve $75,000, jurisdiction will not attach. *Phillips v. Fox Ridge Resort*, 2003 DNH 144 (2003). Once challenged, the burden shifts to the plaintiff to establish, with sufficient and particular facts, "that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Abdel-Aleem,* 665 F.3d at 41.

The First Circuit upheld a district court's dismissal of a complaint for lack of subject matter jurisdiction when the claimant alleged that his damages were "at least $1,000,000." *Id.,* 43. The claimant's alleged damages appeared to be an imaginary number as he provided no substantiation for that number. *Id.* The claimant provided no affidavit, factual or legal support for the $1,000,000 figure. *Id.* Instead, the claimant alleged, without substantiation, that he had suffered general damages including emotional distress, reputational injury, privacy injury, loss of employment, and legal fees. *Id.*, 41. When describing the legal fees, the claimant alleged that he spent "thousands of dollars." *Id.* Not only are attorney fees not normally included in the amount to confer jurisdiction, the claimant's vague description failed to provide sufficient particularity for the Court to consider. *Id.* The Court stated that jurisdiction "is not conferred by the stroke of a lawyer's pen." *Id.*

Like *Abdel-Aleem*, PC Connection fails to plead facts that support the amount in controversy, at the time the complaint was filed, are insufficient to confer subject matter

jurisdiction to this Court.  PC Connection has merely made a "formulaic recitation" of the threshold amount in controversy.  Doc. 12, ¶¶45, 50.  Even after amending its Complaint, PC Connection has failed to adequately support its claimed damages.  For example, PC Connection alleges that because "the yearly revenue from the customers for which [Price] was responsible is well in excess of $10,000,000" that the "loss of even a very small percentage of such revenue as a result of Defendant's actions would easily satisfy the $75,000 amount in controversy standard." *Id.*  This does not identify the damages actually suffered by PC Connection at the time it filed its complaint.  Instead, it identifies future, and purely speculative damages.  On its face, the complaint is void of support for the claimed $75,000 in damages. *Id*.  PC Connection even admits that "the amount of damages cannot reasonably be ascertained at present." *Id*.  It is difficult to understand how PC Connection can claim that the amount of its damages ***will*** exceed $75,000, when it is unable to ascertain what its damages are. *Id.*

PC Connection is likely having difficulty establishing the extent of its damages because they are speculative.  PC Connection alleges that it "***will***" suffer damages in an amount exceeding $75,000, because Price "will ***inevitably*** breach his Agreement not to divulge PC Connection's Confidential Information" sometime in the future, but not at the filing of its complaint. *Id*., ¶¶43, 45 (emphasis added).  PC Connection's damages are unmeasured because at the time it filed its complaint and its amended complaint, it had suffered no actual damages. *Id*.  PC Connection does not allege with any particularity any confidential information that the Defendant allegedly discussed or customers he allegedly improperly solicited.  Instead, PC Connection alleges damages it may have in the future if the Defendant breaches their agreement sometime in the future.  PC Connection's complaint is premature.

Because PC Connection's allegations in this matter do not support that the amount in controversy required for diversity jurisdiction, the Court should decline subject matter jurisdiction and dismiss the complaint pursuant to Rule 12(b)(1).

**III.    Conclusion**

For the foregoing reasons, PC Connection's *Amended Complaint for Injunctive Relief and Damages* should be dismissed for failure to state a cause of action and improper service.

Respectfully submitted,

STEPHEN P. PRICE, Defendant

By His Attorneys,
UPTON & HATFIELD, LLP

Date:  August 6, 2015          By:   /s/ Lisa A. Hall
                                     Charles W. Grau (NHBA #987)
                                     Lisa M. Hall (NHBA #19870)
                                     10 Centre Street, P.O. Box 1090
                                     Concord, NH 03302-1090
                                     (603) 224-7791
                                     lhall@uptonhatfield.com

<u>**CERTIFICATION**</u>

I hereby certify that a copy of the foregoing was served upon counsel of record via ECF system this date.

Date:  August 6, 2015                        /s/ Lisa A. Hall
                                             Lisa M. Hall