## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**PC Connection, Inc.**

   v.                                   Case No. 15-cv-208-PB
                                          Opinion No. 2015 DNH 202
**Stephen P. Price**

### MEMORANDUM AND ORDER

PC Connection, Inc. brought this action against its former employee, Stephen P. Price, alleging breach of Price's employment contract, breach of the implied covenant of good faith and fair dealing, conversion, and breach of fiduciary duties. Price moves to dismiss all claims for lack of subject matter jurisdiction.  In the alternative, he argues that the complaint must be dismissed because it fails to state a viable claim for relief.  For the reasons provided below, I determine that this court has subject matter jurisdiction over PC Connection's claims, and grant in part and deny in part Price's motions to dismiss for failure to state a claim.

### I.   BACKGROUND

PC Connections is a Delaware corporation headquartered in New Hampshire that "sells computers, software and related products and services" nationwide.  Doc. No. 12 ¶¶7, 15.  Price,

a Maryland resident, worked for PC Connection from April 2010 until May 2015 as a Business Development Manager ("BDM") in the Mid-Atlantic region, where PC Connection has "dozens of customers" and enjoys "revenue . . . well in excess of $10,000,000." Id., ¶¶3, 8, 24.  As a BDM, Price "worked directly with PC Connection's customers and potential customers regarding the purchasing of PC Connection products and services," "obtained detailed knowledge of confidential information regarding PC Connection's overall business practices related to sales," and "participated in high-level strategy discussions regarding PC Connection's business." Id., ¶¶24, 26, 27.

Price executed an Employee Agreement as a condition of his employment.  Id., ¶21.  The Agreement, which Price signed on March 18, 2010, included non-competition, non-solicitation, good will, and nondisclosure/nonuse of confidential information provisions.  Id., ¶22, 29; see Doc. No. 12-1.

Price voluntarily resigned from his position at PC Connection on May 22, 2015.  Doc. No. 12 ¶30.  He subsequently informed PC Connection that he planned to work "in sales" for Presidio, an IT company that is a "direct competitor to PC Connection." Id., ¶¶32, 33.  PC Connection told Price that it

believed that working for Presidio would violate Price's obligations under the Agreement.  Id., ¶34.  Price disagreed and reconfirmed his intention to work for Presidio.  Id., ¶35.

On May 4, 2015, the same day Price received his formal job offer from Presidio, he sent five Excel spreadsheets containing "confidential PC Connection customer sales and revenue information" from his PC Connection email account to his personal email address.  Id., ¶37.  Price has also refused to return a USB drive he had used in the course of his work at PC Connection, which contained confidential files.  Id., ¶38.

## II.  ANALYSIS

Price moves to dismiss on two grounds.  First, he argues that the court lacks subject matter jurisdiction because PC Connection has failed to satisfy the $75,000 amount in controversy requirement that must be met when jurisdiction is based on diversity of citizenship.  Second, Price argues in the alternative that all of PC Connection's claims must be dismissed for failure to state a claim.  Because the standards of review that govern these two arguments differ, I deal with them separately.

**A.   Subject Matter Jurisdiction[1]**

PC Connection asserts that the court has diversity of citizenship jurisdiction over this case.  Doc. No. 12 ¶11; see 28 U.S.C. § 1332(a)(1).  With respect to the amount in controversy requirement, PC Connection states that "the amount of damages cannot reasonably be ascertained at present but will exceed $75,000" based on Price's sales revenue as a PC Connection employee, the potential lost revenue due to Price's competition against PC Connection, and the value of the confidential information that Price allegedly misappropriated. Id. at ¶45.  Price argues that these allegations are not sufficient to satisfy the requirement.  Doc. No. 14-1 at 19-20.

The plaintiff bears the burden of showing that § 1332 (a)(1)'s amount in controversy requirement, currently $75,000, has been met.[2]  Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012).  If made in good faith, the sum claimed by the plaintiff controls.  Stewart v. Tupperware Corp., 356 F.3d 335,

---

[1] I address Price's 12(b)(1) motion first, in light of Ne. Erectors Ass'n of BTEA v. Sec'y of Labor, 62 F.3d 37, 39 (1st Cir. 1995).

[2] Price does not challenge that diversity of citizenship exists. PC Connection is a Delaware corporation with its principal place of business in New Hampshire, and Price is a Maryland resident. Doc. No. 12 ¶¶7-8.

338 (1st Cir. 2004).  "Good faith is measured objectively; the
question is whether to anyone familiar with the applicable law
this claim could objectively have been viewed as worth more than
the jurisdictional minimum."  Abdel-Aleem, 665 F.3d at 41
(citations and internal alterations omitted).  It "must appear
to a legal certainty that the claim is really for less than the
jurisdictional amount to justify dismissal."  Id. (citations and
internal punctuation omitted).

A party's "general allegation of damages that meet the
amount requirement suffices unless questioned by the opposing
party or the court."  Stewart, 356 F.3d at 338 (citation and
internal punctuation omitted).  Once questioned, however, the
party invoking federal jurisdiction must allege "with sufficient
particularity facts indicating that it is not a legal certainty
that the claim involves less than the jurisdictional amount."
Id.  A party can meet this burden by amending pleadings or
submitting affidavits.  Abdel-Aleem, 665 F.3d at 42.

In actions, like this one, for injunctive relief, "the
amount in controversy is measured by the value of the object of
the litigation."  Hunt v. Washington State Apple Advert. Comm'n,
432 U.S. 333, 347 (1977); see Richard C. Young & Co. v.
Leventhal, 389 F.3d 1, 3 (1st Cir. 2004) (stating that amount in

controversy is measured "by the judgment's pecuniary
consequences to those involved in the litigation").  As other
courts have explained, "[t]he value of an injunction may not be
capable of precise determination, but precision is not required"
to satisfy the amount in controversy requirement.  Mailwaukee
Mailing, Shipment and Equip., Inc. v. Neopost, Inc., 259 F.
Supp. 2d 769, 772 (E.D. Wis. 2003) (citing Hedberg v. State Farm
Mut. Auto. Ins. Co., 350 F.2d 924, 929 (8th Cir. 1965).

When weighing the "value of the object of the litigation"
in cases involving injunctions to enforce (or prevent
enforcement of) non-competition agreements, courts have
previously considered a number of factors, including (1) the
business generated by the employee immediately before his
employment ended, (2) anticipated lost revenues caused by the
alleged breach of the covenant, and (3) the value of the
confidential information endangered by the employee's new
association with a competitor.  4 Callmann on Unfair Comp., Tr.
& Mono. § 24:16 (4th Ed.); see, e.g., Johnson v. ISCO Indus.,
LLC, 2008 WL 4999274, at *2-3 (E.D. Wis. Nov. 21, 2008) (relying
on loss of customer goodwill and customer information to
competitor); Mahoney v. Dupuy Orthopaedics, Inc., 2007 WL
3341389, at *4 (E.D. Cal. Nov. 8, 2007) (relying on employee's

prior sales); Davis v. Advanced Care Techs., Inc., 2007 WL
1302736, at *1-2 (E.D. Cal. May 2, 2007) (relying on the value
of trade secrets); see also 14AA Charles Alan Wright, et al.,
Fed. Prac. & Proc. Juris. § 3708 (4th ed.).

Here, PC Connection alleges that "the yearly revenue from
the customers for which [Price] was responsible is well in
excess of $10,000,000," and so "the loss of even a very small
percentage of such revenue as a result of [Price's] actions
would easily satisfy the $75,000 amount in controversy
standard." Doc. No. 12 ¶45.  PC Connection also states that
Price's alleged "misuse . . . of PC Connection's Confidential
Information, which it spends many hundreds of thousands of
dollars developing and maintaining, will also easily satisfy the
$75,000 amount in controversy standard."  Id.  PC Connection
thus points to specific, relevant evidence to support its
assertion that the "value of the object of the litigation"
exceeds $75,000.[3]  See Hunt, 432 U.S. at 347; see also Johnson,

---

[3] Price's reliance on Abdel-Aleem is misplaced.  This case,
unlike Abdel-Aleem involves a request for injunctive relief,
which alters my analysis in the ways explained above.  Further,
the damages allegation in Abdel-Aleem ("at least $1,000,000")
was, as Price himself recognizes, entirely conclusory.  665 F.3d
at 41; Doc. No. 14-1, at 20.  In this case, by contrast, PC
Connection points specifically to Price's prior sales and the
value of its information to support its claim.

2008 WL 4999274, at *2-3; Mahoney, 2007 WL 3341389, at *4.

I therefore determine that PC Connection has alleged sufficient facts to show that it is not a legal certainty that its claims involve less than $75,000. Stewart, 356 F.3d at 338. As such, this court has subject matter jurisdiction over PC Connection's claims.

**B.**   **Failure to State a Claim**

PC Connection brings claims for: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) conversion, and (4) breach of fiduciary duties. Price argues in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) that all four claims are deficient.

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it provides "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," id., but "simply calls for enough fact to raise a reasonable expectation that discovery

will reveal evidence" of wrongdoing.  Twombly, 550 U.S. at 556.

I employ a two-step approach in deciding a Rule 12(b)(6)

motion.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12

(1st Cir. 2011).  First, I screen the complaint for statements

that "merely offer legal conclusions couched as fact or

threadbare recitals of the elements of a cause of action."  Id.

(citations, internal punctuation, and alterations omitted).  I

then accept as true all non-conclusory factual allegations and

the reasonable inferences drawn therefrom, and determine whether

the claim is plausible.  Id.

I apply the Rule 12(b)(6) test to each of P.C. Connection's

claims in turn.[4]

---

[4] Price bases his motion on a number of factual statements that
are not supported either by the amended complaint or by the
Agreement (which is appended to the amended complaint).  Price
supports some such statements with documents that he has
submitted.  See Doc. Nos. 11-2, 11-3, 11-4, 11-5, 11-6, 14-2.
When deciding a Rule 12(b)(6) motion, I generally may consider
"only facts and documents that are part of or incorporated into
the complaint . . . ."  Rivera v. Centro Medico de Turabo, Inc.,
575 F.3d 10, 15 (1st Cir. 2009) (citation and internal
punctuation omitted).  The First Circuit recognizes a "narrow"
exception to this rule, however, for "documents – the
authenticity of which is not challenged – that are central to
the plaintiff's claim or sufficiently referred to in the
complaint, even if those documents are not physically attached
to the pleading."  Carrero-Ojeda v. Autoridad de Energia
Electrica, 755 F.3d 711, 717 (1st Cir. 2014).  Price argues that
I may, and should, consider the proffered materials because they
fit within the First Circuit's exception.  PC Connection
disagrees.  Doc. No. 15-1, at 3.  I need not determine which, if

1.   <u>Breach of Contract (Count I)</u>

PC Connections alleges that Price breached the parties'
Agreement by: (1) seeking and accepting employment with a PC
Connection competitor, (2) soliciting PC Connection's current
and potential customers, (3) retaining its confidential
information, and (4) using and/or disclosing that confidential
information on his new employer's behalf.  Doc. No. 12 ¶42.

Price moves to dismiss, arguing that PC Connection's claim
fails "to the extent that" portions of the Agreement are
unenforceable under New Hampshire law.[5]  Doc. No. 14-1, at 6-7.
Price specifically contends that the Agreement's non-competition
and non-solicitation clauses are "unreasonable on [their] face,"
overbroad, impose an undue hardship on Price, and are therefore
unenforceable.  <u>Id.</u> at 6-11.

_____

any, of the documents fit within the First Circuit's exception,
however, because their consideration would not affect my ruling
on the motion to dismiss.

[5] As Price appears to recognize, PC Connection's breach of
contract claim does not rely exclusively on Price's alleged
violations of the Agreement's non-competition and non-
solicitation provisions.  Doc. No. 14, at 6 ("PC Connection
alleges that the Defendant breached their agreement, <u>in part</u>, by
accepting employment with a competitor and possibly soliciting
PC Connection's prospective customers.") (emphasis added).
Indeed, PC Connection also alleges that Price breached the
Agreement by retaining and/or using PC Connection's confidential
information.  Doc. No. 12 ¶42.

In New Hampshire, a "breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Lassonde v. Stanton, 157 N.H. 582, 588 (2008) (citation and alteration omitted).  A viable breach of contract claim therefore requires "(1) that a valid, binding contract existed between the parties, and (2) that [the defendant] breached the terms of the contract." Wilcox Indus. Corp. v. Hansen, 870 F. Supp. 2d 296, 311 (D.N.H. 2012) (internal citations omitted).

Price is correct that New Hampshire law generally disfavors restrictive covenants in employment contracts.  See Concord Orthopaedics Prof'l Assoc. v. Forbes, 142 N.H. 440, 442 (1997); Doc. No. 14-1, at 8.  Such restraints are narrowly construed, and are only "enforceable if the restraint is reasonable, given the particular circumstances of the case." Merrimack Valley Wood Prods. v. Near, 152 N.H. 192, 197 (2005).  A covenant is "unreasonable" if it is (1) broader than needed to guard the employer's legitimate interests, (2) imposes an undue hardship on the employee; or (3) harms the public interest.  Id.  An "unreasonable" restraint is unenforceable.  See ACAS Acquisitions (Precitech) Inc. v. Hobert, 155 N.H. 381, 388 (2007).  Even if a covenant is unenforceable as drafted,

however, courts have equitable discretion to reform and enforce an overbroad restriction under some circumstances.  See Merrimack Valley, 152 N.H. at 200.

It is for the court to decide whether the covenant in a particular case is reasonable.  See Concord Orthopaedics, 142 N.H. at 443.  This is a "fact-intensive inquiry" that requires courts to consider "the unique facts presented by each case." Powers v. N. Lights Landscape Contractor, LLC, 2014 DNH 144, 3 (citing Concord Orthopaedics, 142 N.H. at 442-43).  Because of the fact-based nature of this analysis, it is inappropriate to judge whether a particular covenant is reasonable before the parties have an opportunity to develop the factual record.  See Powers, 2014 DNH 144, 3 (declining to decide whether a non-compete clause was "reasonable" on a 12(b)(6) motion).

Because of the limited facts properly before me, then, I cannot now decide whether the Agreement's non-competition or non-solicitation provisions are consistent with New Hampshire law.  See id.  Similarly, I do not determine whether the covenant, if invalid as written, might be reformed.  See Powers, 2014 DNH 144, 3; Merrimack Valley, 152 N.H. at 200.

PC Connection has set out the essential elements of a viable breach of contract claim – namely the existence of a

valid contract, and a breach of that contract.  Price's motion
to dismiss PC Connection's breach of contract claim is therefore
denied.

    2.  Good Faith and Fair Dealing (Count II)

    PC Connection alleges that Price breached the implied
covenant of good faith and fair dealing by "agree[ing] to comply
with the non-competition and other provisions of the Agreement,
[and] thereafter fail[ing] to honor those obligations." Doc. No.
12 ¶49.  Price moves to dismiss this count, asserting that PC
Connection's claim "relies exclusively on the unlawful non-
compete provision and is nothing more than a restatement of its
breach of contract claim."[6]  Doc. No. 14-1, at 7.  PC Connection
responds, without supporting its position, that Price's
"deliberate violation[s] of the Agreement . . . give rise to a
plausible claim of the violation of good faith and fair
dealing."  Doc. No. 15-1, at 17.  I disagree, and grant Price's
motion.

    In New Hampshire, there is an implied covenant in every

---

[6] Price is simply incorrect that PC Connection's breach of good
faith and fair dealing claim depends "exclusively" on Price's
alleged breach of the Agreement's non-compete clause.  Doc No.
14-1, at 7.  Instead, as the amended complaint makes clear,
Price allegedly violated his duty of good faith by failing to
comply with the Agreement's "non-competition and other
provisions."  Doc. No. 12 ¶49 (emphasis added).

agreement "that the parties will act in good faith and fairly with one another." Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009). New Hampshire law "relie[s] on such an implied duty in three distinct categories of contract cases: those dealing with standards of conduct in contract formation, with termination of at-will employment contracts, and with limits on discretion in contractual performance." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989); see Livingston, 158 N.H. at 624.

Although PC Connection does not address the issue in either its amended complaint or its opposition to Price's motion to dismiss, its claim fits most neatly into the third category.  In explaining this third category, the New Hampshire Supreme Court stated in Centronics Corp. v. Genicom Corp. that:

> Despite the variety of their fact patterns, these cases illustrate a common rule: under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

132 N.H. at 143 (emphasis added).

In this case, PC Connection has failed to allege that the Agreement vests Price with discretion in performance, or that he

exercised such discretion in a manner that denied PC Connection an essential benefit of the bargain.  See Wilcox Indus., 870 F. Supp. 2d at 312.  Conversely, PC Connection contends that the Agreement expressly bars Price from "accepting employment with a [PC Connection] competitor" or retaining PC Connection's confidential information.  Doc. No. 15-1, at 17.  PC Connection thus fails to recognize that "the duty of good faith and fair dealing ordinarily does not come into play in disputes between commercial actors if the underlying contract plainly spells out both the rights and duties of the parties and the consequences that will follow from a breach of a specified right."  Wilcox Indus., 870 F. Supp. 2d at 312 (citations and punctuation omitted).

In stating its claim, PC Connection simply argues that Price "act[ed] in bad faith in performance of his obligations pursuant to the Agreement" by "fail[ing] to honor" those obligations.  Doc. No. 12 ¶49.  The implied covenant of good faith and fair dealing does not provide a remedy where the plaintiff alleges only that the defendant breached the contract in bad faith.  Wilcox Indus., 870 F. Supp. 2d at 312.  PC Connection has therefore insufficiently pled its claim, and I grant Price's motion to dismiss it.

3.   <u>Conversion (Count III)</u>

PC Connection next brings a claim for conversion, alleging that Price "intentionally exercised dominion and control over the property of PC Connection" by (1) downloading "PC Connection files" to a USB device (and then refusing to return that device), and (2) sending "highly confidential PC Connection information" to his personal email address.  Doc. No. 12 ¶¶54-56.  Price moves to dismiss this claim, arguing (1) that New Hampshire law "does not permit recovery for conversion of electronic data," and (2) that the New Hampshire Uniform Trade Secrets Act ("NHUTSA") preempts PC Connection's conversion claim.  Doc. No. 14-1, at 15-18.  Because I agree that the NHUTSA preempts this claim, I grant Price's motion to dismiss PC Connection's conversion claim.

The NHUTSA, this state's codification of the Uniform Trade Secrets Act, aims to "codify all the various common law remedies for theft of ideas."  Mortg. Specialists, Inc. v. Davey, 153 N.H. 764, 776 (2006) (citations and internal punctuation omitted).  As such, the Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  N.H. Rev. Stat. Ann. § 350-B:7.  The NHUTSA sweeps more broadly than

"trade secrets," however, and "preempts claims that are based upon the unauthorized use of information, regardless of whether that information meets the statutory definition of a trade secret." Mortg. Specialists, 153 N.H. at 777.

To determine whether the NHUTSA preempts a particular claim, courts "must examine the facts alleged in support of each claim to determine the extent to which the claim is based upon the misappropriation of trade secrets or other information." Id. at 666. The NHUTSA preempts a claim "based solely on, or to the extent that it is based on, the allegations or the factual showing of unauthorized use of information or misappropriation of a trade secret." Id. at 665 (citations and alterations omitted).

Applying these principles, the New Hampshire Supreme Court held in Mortgage Specialists that the NHUTSA preempted a conversion claim that was based solely on defendants taking and using plaintiff's confidential information. 153 N.H. at 666. In that case, an employer sued its former employees for conversion, alleging that the defendants "exercised dominion and control over [plaintiff's] property and assets so as to deprive [plaintiff] of dominion and control of same." Id. The only factual allegation supporting that claim, however, was that the

17

defendants kept and used customer information after their
employment ended.  Id.  The New Hampshire Supreme Court
therefore held that the NHUTSA preempted plaintiff's conversion
claim because the claim was "based solely on" allegations of
"unauthorized use of" plaintiff's confidential information.
Id.; see also Glynn v. EDO Corp., 641 F. Supp. 2d 476, 483-84
(D.Md. 2009) (applying New Hampshire law, and dismissing
plaintiff's conversion claim under similar facts).

Mortgage Specialists bars PC Connection's conversion claim
here.  The sole factual assertion supporting PC Connection's
conversion claim is that Price "downloaded PC Connection files"
to a USB device (and then refused to return the device), and
sent himself "highly confidential PC Connection information" via
email.  Doc. No. 12 ¶¶55-56.  Thus, like in Mortgage
Specialists, PC Connection's conversion claim is "based solely
on" Price's alleged misappropriation of PC Connection's
information.  See Mortg. Specialists, 153 N.H. at 666.  The
NHUTSA therefore preempts PC Connection's conversion claim, and
I grant Price's motion to dismiss the claim.[7]  Id.

---

[7] To the extent that PC Connection bases its conversion claim on
Price allegedly converting the USB drive itself (rather than the
data contained on the drive), see Doc. No. 18 at 23, PC
Connection may amend its complaint within fourteen days to
reflect that theory.

4.   <u>Breach of Fiduciary Duties</u>

Finally, PC Connection claims that Price breached fiduciary duties owed to PC Connection. PC Connection alleges that Price "owed fiduciary duties of loyalty and care to PC Connection" because of "his position, title and responsibilities" with the company, and violated those duties "[b]y his actions," described in the amended complaint.  Doc. No. 12 ¶¶58-59.  Price moves to dismiss this claim, arguing that the claim is (1) insufficiently pled, (2) repetitive, and (3) preempted by the NHUTSA.  Doc. No. 14-1, at 18-19. I address each argument in turn, and ultimately grant in part and deny in part Price's motion.

**a.   Pleadings Argument**

Price argues that PC Connection fails to allege adequately that Price owed fiduciary duties to PC Connection.  <u>Id.</u>, at 18. I disagree.

Under New Hampshire law, a fiduciary relationship is broadly defined, and "exist[s] in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." Lash v. Cheshire Cnty. Sav. Bank, 124 N.H. 435, 439 (1984) (citation omitted).  "Once a person becomes a fiduciary, the law places

19

him in the role of a moral person and pressures him to behave in a selfless fashion . . . ." Id. at 438 (internal alteration omitted). "In doubtful cases" the existence of a fiduciary relationship between two parties "is a question of fact for the trier of fact." Id.

Employees typically owe fiduciary duties to their employer. See Restatement (Third) of Agency § 8.04. Interpreting New Hampshire law specifically, this court has stated that "an employee holding a position of trust and confidence, such as a supervisor, manager, director, or officer, owes a fiduciary duty of loyalty to her employer." White v. Ransmeier & Spellman, 950 F. Supp. 39, 43 (D.N.H. 1996) (holding that an "at-will, nonmanagerial" legal secretary owed no duty of loyalty to her employer).

PC Connection asserts that Price owed fiduciary duties to PC Connection "[a]s a result of his position, title and responsibilities." Doc. No. 12 ¶58. That position, as a PC Connection Business Development Manager, involved "obtain[ing] detailed knowledge of confidential information regarding PC Connection's overall business practices related to sales," "participat[ing] in high-level strategy discussions regarding PC Connection's business," and required Price to become "intimately

familiar with PC Connection's confidential . . . information, including its methodologies and business strategies."  Doc. No. 12 ¶¶3, 26, 27; see also id., ¶57 (restating and incorporating by reference "all previous allegations" into the breach of fiduciary duties claim).

Accepting PC Connection's allegations as true, Price occupied a "position of trust and confidence," White, 950 F. Supp. at 43, at PC Connection. He was not merely a low-level employee or "worker bee."  TalentBurst, Inc. v. Collabera, Inc., 567 F. Supp. 2d 261, 266 (D.Mass. 2008).  He was, instead, a "manager" entrusted with confidential sales and business information, who participated in "high-level" business strategy discussions.  Based on those facts, PC Connection has adequately alleged, at this stage, that Price owed the company a duty of loyalty.

### b.   Repetition Argument

Next, Price argues that the breach of fiduciary duties claim fails because, "[w]hen the actions complained of are governed by a contract, the obligations of the parties are determined by contract law and not by fiduciary principles." Doc. No. 14-1, 18-19.  I reject this argument.

Despite this broad assertion, neither case that Price

cites, Clapp v. Goffstown School District and Wilcox Industries actually supports his position.  Instead, both cases deal expressly with unjust enrichment, not breach of fiduciary duty, claims.  In Clapp, for example, the court stated that a court generally may not "allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand." 159 N.H. 206, 210–11 (2009) (emphasis added). Likewise, in Wilcox Industries, I relied on Clapp and stated that I would dismiss a "unjust enrichment claim . . . because [it] merely restate[d plaintiff's] breach of contract claim." 870 F. Supp. 2d at 308 n.3 (emphasis added).  These cases, then, stand for the proposition that "unjust enrichment shall not supplant the terms of an agreement." Clapp, 159 N.H. at 210 (emphasis added).  They do not, as Price argues, mean that contractual obligations displace fiduciary principles.[8]

Price cites no precedent actually supporting its position, and I am aware of none.

### c.   NHUTSA Argument

Finally, Price argues that, "to the extent that PC Connection's breach of fiduciary duty [claim] is based upon

---

[8] In fact, despite Price's citation to Clapp, the word "fiduciary" appears nowhere in the Clapp opinion.

allegations that [Price] misappropriated its data, it . . . is preempted by NHUTSA." Doc. No. 14-1, at 19. I agree.

As explained above, the NHUTSA preempts a claim "to the extent that it is based on[] the allegations or the factual showing of unauthorized use of . . . information or misappropriation of a trade secret." Mortg. Specialists, 153 N.H. at 665 (citation and alterations omitted). A claim therefore survives NHUTSA preemption only "to the extent that it alleges wrongful conduct independent of any alleged unauthorized use of information . . . ." Wilcox Indus., 870 F. Supp. 2d at 304 (emphasis added).

Here, PC Connection alleges that Price's "actions, including those described [in the amended complaint] . . . violated his fiduciary duties of loyalty and care to PC Connection." Doc. No. 12 ¶59. Those "actions" include Price allegedly "retaining," "[u]sing" and/or "disclosing" PC Connection's confidential information. Id. ¶42. To the extent, then, that PC Connection's breach of fiduciary duty claim relies on these allegation that Price misappropriated PC Connection data, that claim is preempted by the NHUTSA, and I grant Price's motion to dismiss.

23

### III.   <u>CONCLUSION</u>

For the reasons set forth above, defendant's Rule 12(b)(1) motion to dismiss (doc. no. 14) is denied. Defendant's Rule 12(b)(6) motion is granted as to Count II, Count III, and Count IV to the extent that it is based on Defendant's alleged misappropriation of data. The Rule 12(b)(6) motion is otherwise denied.[9]

SO ORDERED.

/s/ Paul Barbadoro_____
Paul Barbadoro
United States District Judge

October 29, 2015

cc:   Eric J. Winton, Esq.
      K. Joshua Scott, Esq.
      Charles W. Grau, Esq.
      Lisa Hall, Esq.

---

[9] In its amended complaint's request for relief, PC Connection seeks a preliminary injunction. Doc. No. 12 at 14. In his memorandum of law in support of his motion to dismiss, Price argues that PC Connection is not entitled to a preliminary injunction. Doc. No. 14-1 at 13-15. Because PC Connection has not formally moved for a preliminary injunction, however, I need not address Price's argument that PC Connection is not entitled to that relief.